D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

**ELIZABETH MUIGAI,**

        **Plaintiff,**

        **v.**

**OMNICOM GROUP, INC. and OGI SHARED**
**SERVICE CENTER - ADVERTISING LLC,**

        **Defendants.**
-----------------------------------------------------------x

**Case No.:**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Elizabeth Muigai alleges as follows:

**INTRODUCTION**

1.      Daniel Bearison, Plaintiff's boss, is bullying and harassing Plaintiff because of her mental health condition (depression), and Omnicom and OGI do not seem to care at all.

2.      Plaintiff has been working for over four years as an exemplary employee for Omnicom and OGI. In fact, in 2018, she received a very significant promotion and pay raise as a result of her excellent performance in the field of coding and software development.

3.      Nevertheless, when Plaintiff began to suffer from depression at the end of 2020, Mr. Bearison started harassing Plaintiff. He took away her primary job duties, which she loved and excelled at, and gave them to the rest of her team members. Mr. Bearison also began publicly bullying Plaintiff at meetings and humiliating her on any available occasion, seemingly hoping to push her out of her job.

1

4.     Plaintiff complained several times about this behavior to Human Resources. Instead of curbing Mr. Bearison's disgusting behavior against Plaintiff, Omnicom and OGI simply let Mr. Bearison run wild in his campaign against Plaintiff.  Omnicom's, OGI's, and Mr. Bearison's illegal behavior have caused Plaintiff significant distress and mental anguish. They have repaid Plaintiff's hard excellent work with harassment and bullying.

## JURISDICTION AND VENUE

5.     Plaintiff Muigai brings this action against Defendants Omnicom Group, Inc. and OGI Shared Service Center - Advertising LLC alleging discrimination claims under the New York City Human Rights Law ("NYCHRL").

6.     This Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as Plaintiff is a citizen of New Jersey, Defendants are citizens of New York, and the value of Plaintiff's claims exceeds $75,000.

7.     Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

8.     Defendant Omnicom Group, Inc. ("Omnicom") is a New York corporation with its principal place of business in Manhattan.  Omnicom is an American global media, marketing, and corporate communications holding company.

9.     Defendant OGI Shared Service Center – Advertising LLC ("OGI") is a Delaware limited liability company. OGI issued Plaintiff's paychecks for her work for Omnicom. Upon information and belief, Omnicom, a citizen of New York, is OGI's sole member.

10.     At all relevant times, Omnicom and OGI have each had more than four employees, and they were Plaintiff's employers under the NYCHRL.

11.     Plaintiff Elizabeth Muigai is a citizen of New Jersey.  She has been employed by Defendants as a Database Administrator for Omnicom since the end of 2016.

## **FACTS**

12.     Plaintiff has worked for Defendants as a Database Administrator since late 2016.

13.     Plaintiff received consistently good reviews from Defendants.

14.     In mid-2018, Defendants gave Plaintiff a merits-based promotion with a substantial pay increase.

15.     In or about April 2020, Mr. Bearison became Plaintiff's direct supervisor.

16.     Until December of 2020, and the ensuing months, Plaintiff was not the subject of criticism and/or performance-related discipline by Mr. Bearison.

17.     Plaintiff lived alone and was mostly alone in her apartment from the beginning of the Covid-19 pandemic in early 2020 through the end of 2020.

18.     As a result of this isolation, Plaintiff began to feel extreme symptoms of depression in early December 2020.

19.     At that time, Plaintiff asked Mr. Bearison for permission to take time off to deal with her mental health.

20.     Mr. Bearison refused Plaintiff's request, even though Plaintiff had more than enough PTO accrued to cover her request.

21.     Mr. Bearison strongly scolded Plaintiff for making the request, as there was a project with a late January 2021 deadline that Plaintiff had been working on, the "OHG Database Upgrade."

22.     While Plaintiff recognized the significance of her involvement in the OHG Database Upgrade, because of her mental health condition she could not continue working before taking some time off.  Moreover, there were other highly-skilled members of her team that could fill in in her absence.  Further, Plaintiff took many necessary steps to ensure the project would not fall behind during her leave.

23.     Plaintiff informed Human Resources (HR) of her need for mental-health leave and of Mr. Bearison's refusal.  HR authorized Plaintiff's leave from December 14 to December 28, 2021 and assisted Plaintiff in finding a mental health professional to help her deal with her depression.

24.     As soon as Plaintiff returned from her mental health leave, Mr. Bearison began engaging in harassing and discriminatory behavior aimed at making her life miserable and pushing her out of her job.

25.     The day after Plaintiff returned, she had a meeting with Mr. Bearison, and Mr. Bearison said sarcastically, "If at any point you feel not well, just let us know."

26.     The following day in the afternoon, Mr. Bearison sent Plaintiff a hostile email falsely accusing Plaintiff of not responding to an email the night before and stating, "If you're not in yet, don't even bother coming in." Mr. Bearison copied HR on the email.  Plaintiff was perplexed by this email, as she had responded to the email in question and had already checked into work for that day.

27.     The next day, Plaintiff, sensing Mr. Bearison's unprecedented hostility, confronted Mr. Bearison.  Plaintiff asked him why he was suddenly so hostile and why he felt the need to copy HR on a scheduling matter.

28.     Mr. Bearison stated, "I don't know anything about you anymore," referring to her having taken a mental health leave.

29.     Plaintiff explained that due to her mental health condition, she really needed the time off, and because he refused it, she had no choice but to escalate her request to HR.  Mr. Bearison responded, "I've been here 17 years. I don't need anyone telling me what to do."

30.     Plaintiff stressed that she wanted their relationship to continue smoothly and asked Mr. Bearison if there were any performance related issues that he would like to address.

31.     Mr. Bearison stated that her performance was in fact good, but that she "lacked spirit of the team."

32.     Of course, "team spirit" was not an issue that Mr. Bearison had ever confronted Plaintiff about previously, and he was clearly upset that Plaintiff took time off to deal with her depression.

33.     Mr. Bearison then stated that going forward he would take away all development work from Plaintiff and assign her exclusively lower-level work, such as responding to "Paige tickets" (requests for assistance from end-users at the company), so that Plaintiff "could learn to speak to people."

34.     Mr. Bearison asserted that he would be reassigning Plaintiff's development work to the other members of his team.  (Plaintiff later learned that Mr. Bearison was not authorized to make this change to Plaintiff's work assignment.)

35.     Since learning of Plaintiff's mental health condition, Mr. Bearison consistently talks down to Plaintiff at team meetings and bullies and berates her in front of the rest of her team. His treatment has been so harsh that Plaintiff took several days of paid time off in order to avoid a further exacerbation of her depression.

36.     Plaintiff had been slated to receive a pay raise in December 2019.  At that time, Plaintiff was moving from Manager Rachel Feinberg's team to Mr. Bearison's team and was told by Ms. Feinberg that she would receive the raise once the team transfer was complete.

37.     However, Plaintiff did not receive the pay raise in 2020 because of Covid-related business interruption.

38.     In early January 2021, Plaintiff asked Mr. Bearison when she would receive the raise.  Mr. Bearison, knowing full-well that Plaintiff was entitled to the raise, simply dismissed Plaintiff, stating, "Why should you get a pay raise?"

39.     On January 8, 2021, Mr. Bearison had Plaintiff's access to her prior database work removed, which hampered Plaintiff's ability to do any work.  It took a few days for Plaintiff to have this access restored, and it has been only partially restored, thus hamstringing Plaintiff's work abilities.

40.     On January 11, 2021, Plaintiff was on a meeting with her entire team, Mr. Bearison, and two vendors.  The meeting related to development work that Plaintiff had been working on before her leave.

41.     At the meeting, Plaintiff mentioned she needed certain documentation from the other (male) team members with respect to certain corrections they made to a database.  Mr. Bearison immediately responded, "These gentlemen are smart, brilliant, creative and know what they're doing, Elizabeth.  I need you to concentrate on Paige ticketing."  Plaintiff was humiliated by being publicly dismissed out of hand.

42.     On January 22, 2021, Mr. Bearison berated Plaintiff during a meeting when she began to discuss a certain database project that she had started with one team member before being reassigned to Paige ticketing.

43.     After the meeting, Mr. Bearison had a one-on-one meeting with Plaintiff, during which he aggressively stated, "I was crystal clear, I don't think you understand me.  You are to be working only on Paige tickets."

44.     Plaintiff explained that some of her Paige tickets related to the database project and needed clarification, but Mr. Bearison insisted that she should not ask any database-related questions of her team members.  Clearly, Mr. Bearison was sabotaging Plaintiff's work and setting her up for failure.

45.     Mr. Bearison's treatment of Plaintiff is indefensible.  Plaintiff was an excellent employee for Defendants and her responsibilities had been steadily increasing, until Mr. Bearison began to bully her upon learning of her mental health condition.

46.     In fact, in 2018, Plaintiff received a promotion specifically for the coding/development work Mr. Bearison is now taking away from her and giving to her colleagues.

47.     Mr. Bearison's bullying of Plaintiff and frustrating her job performance continued to escalate. He continued talking down to her and trying to hamper her ability to perform any meaningful work at all.

48.     In mid-February 2021, Plaintiff complained to HR that Mr. Bearison was discriminating against her because of her depression and that he was openly favoring her colleagues with respect to work assignments.  Plaintiff also mentioned Mr. Bearison's refusal to approve the pay raise she was promised.

49.     HR did little to help Plaintiff.  Mr. Bearison continued to berate Plaintiff publicly in team meetings, including one particularly harsh episode on March 22, 2021.

50.     Plaintiff mentioned the March 22, 2021 incident to HR, and again HR did nothing to help Plaintiff.

51.     On April 5, 2021, Plaintiff reached out again to HR, asking if they had done anything at all with respect to her complaints about Mr. Bearison's harassment and withholding of her pay raise.

52.     On April 9, 2021, HR met with Plaintiff.   They confirmed that Mr. Bearison (a) did not have the right to change her job title and take away her development/coding work, and (b) was supposed to give her a pay raise.

53.     HR promised to address the situation, but they still have not meaningfully done so.

54.     Since the April 9, 2021 discussion with HR, Mr. Bearison has continued his campaign of limiting Plaintiff's job duties, despite HR's representations that he could not do so.

55.     Plaintiff continues to work side by side with other individuals on her team who are now performing precisely the work she performed before Mr. Bearison retaliatorily stripped her of her primary job duties.

56.     In another display of mocking Plaintiff, Mr. Bearison now regularly introduces Plaintiff as a having "special role" assisting Peter Gorski, a team member, as opposed to her actual title, Database Administrator.

57.     Mr. Bearison's disgusting bullying tactics against Plaintiff have caused her significant emotional distress and lost income.

## FIRST CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL")
### N.Y.C. Admin. Code §§ 8-101 *et seq.* –Discrimination)

58.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59.     A copy of this Complaint will be delivered to the New York City Corporation Counsel.

60.      In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of her disability and/or perceived disability.

61.      As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

62.      As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

63.      As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A)      For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B)      For reasonable attorneys' fees, interest, and costs of suit;

(C)      For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York      Respectfully submitted,
       June 22, 2021           JOSEPH & KIRSCHENBAUM LLP

                               By:  */s/ D. Maimon Kirschenbaum*
                                    D. Maimon Kirschenbaum
                                    32 Broadway, Suite 601
                                    New York, NY 10004
                                    Tel: (212) 688-5640
                                    Fax: (212) 688-2548

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.